UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANTHONY AIRHART, et al., | CASE NO. 19-CV-06000-LK |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING STATE CLAIMS |
| v. | |
| CITY OF ABERDEEN, | |
| Defendant. | |

This matter comes before the Court on Defendant City of Aberdeen's Motion for Summary Judgment, Plaintiffs Anthony and Laurie Airhart's Response, and Defendant's Reply. Dkt. Nos. 19, 27, 29. For the reasons discussed below, the Court GRANTS the City's motion with respect to the Airharts' federal claims and REMANDS the pendent state claims. The Court further DENIES as moot the City's Motions in Limine, Dkt. No. 31, and VACATES the trial and remaining pretrial dates. *See* Dkt. No. 18.

## BACKGROUND

Since 1915, the City has owned and operated the Fairview Reservoir, which sits uphill of property owned by the Airharts. Dkt. No. 19 at 1. The stage for the present dispute was set in the

1970s, when a landslide damaged the Fairview Reservoir and surrounding hillside. Dkt. No. 1-1 at 3. The City thereafter maintained a system of culverts, ditches, and drainage pipes to divert water runoff away from the reservoir and reduce the possibility of future landslides. *Id.*; Dkt. No. 19 at 2. These efforts proved successful for the City. Unfortunately, though, and according to the Airharts, the now-diverted water eventually made its way onto their property and caused "extensive damage" to the hillside, "creating crevices in the land, uprooting trees, depositing extensive sediment and water, standing water, and washouts across [the] property." Dkt. No. 1-1 at 3.

The parties agree that Mr. Airhart has an extensive history of complaining to the City. *See id.* at 3–4; Dkt. Nos. 19 at 2; 23 at 2. The bad blood began in earnest in February 2015, when Mr. Airhart complained about active erosion on the Airhart property. Dkt. Nos. 1-1 at 3–4; 22 at 1. The City's Deputy Public Works Director, Rick Sangder, responded by walking the property, but he observed no signs of active erosion or ground movement at the site. Dkt. No. 22 at 2. The Airharts' complaints nonetheless persisted and, in March 2016, several City representatives agreed to tour their property. *Id.* at 2–3. During this tour, Mr. Airhart directed the group to a location on City property, where a protruding storm line was discharging water "into a narrow draw." *Id.* at 3. The topsoil was eroded, and water was discharging onto sandstone substrate material. *Id.*

The group—Mr. Airhart included—discussed three options for mitigating the water runoff at this location: (1) do nothing, since the water was discharging onto sandstone and the erosion appeared to have subsided; (2) extend the pipe down the length of the hill to a new discharge point on the Airhart property and beyond the erosion; or (3) install an energy dissipator at the end of the pipe to slow the water's velocity, which was considered the "best management practice." *Id.* At the direction of Mr. Airhart, the City agreed to implement the second option and "pipe" the water to a new discharge point at the base of the hill. Dkt. Nos. 20 at 2 & Ex. 1; 21 at 2–4; 22 at 3–4.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING STATE CLAIMS - 2

1   The City completed the extension project on September 13, 2016. Dkt. No. 22 at 4. Water now

2   discharges onto a flat area at the bottom of the hill, follows a culvert to property no longer owned

3   by the Airharts, and, eventually, discharges into a small stream leading to Stewart Creek. Dkt. No.

4   20 at 2–3.

5          The City's latest project proved to be a temporary respite, for Mr. Airhart again complained

6   in 2019. Dkt. No. 20 at 3. He claimed that the City was discharging water at the base of the hill

7   without his permission. *Id.* at Ex. 1. The City Engineer, Kristopher Koski, authored a letter to Mr.

8   Airhart acknowledging his complaint and recounting the purpose of the City's 2016 pipe

9   extension. *Id.* Koski also conceded that the City's easement required the water pipes to be buried

10  and, because the discharge point was exposed, proposed three solutions. *Id.* The first (and favored)

11  option called for an easement granting the City permission to maintain the exposed discharge point.

12  *Id.* Koski prepared a rough estimate of fair compensation for the easement ($510) based on the

13  total value of the Airharts' parcel and the approximate square footage of the discharge point and

14  affected area. *Id.* at Ex. 2. Although Mr. Airhart initially appeared agreeable to the easement, he

15  ultimately demanded "a lot more than the value of the easement." *Id.* at 3.

16         The Airharts sued the City—and only the City—asserting a Fifth Amendment takings

17  claim and Fourteenth Amendment due process claim under 42 U.S.C. § 1983. Dkt. No. 1-1 at 8,

18  11–12. They brought several other causes of action under state law, including quiet title,

19  negligence, specific performance, inverse condemnation, trespass, nuisance, waste, and "property

20  damage." Dkt. No. 1-1 at 5–15. The City removed the suit to federal district court. Dkt. 1. *See* 28

21  U.S.C. §§ 1441(a); 1446(a), (b)(1), (b)(2)(B). On the dispositive motion deadline, the City filed a

22  Motion for Summary Judgment on the Airharts' claims. Dkt. No. 19.

23

24

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING STATE CLAIMS - 3

**DISCUSSION**

The City argues that it is entitled to summary judgment because the Airharts fail to state a claim under 28 U.S.C. § 1983 and filed their complaint too late. Dkt. No. 19 at 3–6. In their response to the City's motion, the Airharts declined to address the substantive merits of the City's arguments. Dkt. No. 27 at 1. They premised this decision on the fact that the City noted its motion for December 31, 2021, a federal holiday when the Court was closed. *Id.* But the City, which filed its motion on December 8, 2021, correctly noted it for the fourth Friday thereafter. *See* LCR 7(d)(3) (motions for summary judgment "shall be noted for consideration on a date no earlier than the fourth Friday after filing and service of the motion"). Indeed, Local Rule 6 expressly instructs parties on what to do if a noting date falls on a Saturday, Sunday, or legal holiday: "the time period continues to run until the following day that is not a Saturday, Sunday, or legal holiday." Accordingly, under Local Civil Rules 7(d)(3) and 6, Plaintiffs' response was due on December 27, 2021 (which was not a court holiday), and Defendant's reply was due on January 3, 2022 (the first day after December 31 that was not a holiday).

Although the Court cannot treat the Airharts' refusal to substantively respond to the City's motion as an admission, LCR 7(b)(2), their failure to support their claims with citation to supporting materials or otherwise identify a triable issue of fact is fatal.

A.  Legal Standard

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The plain language of Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. And where,

as here, the defendant is the moving party, this burden is "discharged" by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Although "facts must be viewed in the light most favorable to the nonmoving party" at the summary judgment phase, "that is true only if there is a genuine dispute as to those facts." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 779 (2020) (cleaned up).

The City has carried its burden. And it has supported its factual assertions by "citing to particular parts of the materials in the record, including . . . affidavits or declarations." Fed. R. Civ. P. 56(c)(1)(A), (c)(4). *See* Dkt. No. 19 at 2; Dkt. Nos. 20–23. The Airharts have chosen not to substantively respond. If a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(2)–(3).

B. <u>Section 1983 Claims</u>

The City is the lone defendant in this case. "[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–95 (1978)). To establish liability, a plaintiff must do more than identify conduct attributable to the municipality. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). He or she "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal policy or custom and the deprivation of federal rights." *Id. See also Polk County v. Dodson*, 454 U.S. 312, 326 (1981) ("[O]fficial policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." (quoting *Monell*, 436 U.S. at 694)).

Even assuming, without deciding, that the Airharts have timely established a constitutional violation, they have failed to show that the City had a policy or custom, let alone that such policy or custom was the moving force behind the constitutional deprivation. A plaintiff can satisfy *Monell*'s policy or custom requirement in one of three ways: when (1) the municipality "acts pursuant to an expressly adopted official policy"; (2) the municipality acts, or fails to act, pursuant to a "longstanding practice or custom"; or (3) the "individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Gordon v. County of Orange*, 6 F.4th 961, 973–74 (9th Cir. 2021) (cleaned up).

The Airharts make no attempt to situate the City's alleged wrongdoing within any of these categories. Their Complaint never mentions a "policy" or "custom." Instead, the Airharts advance generalized allegations about the City's "negligence," "negligent installation" of the drainage system, or "intentional diver[sion]" of water. *See, e.g.*, Dkt. No. 1-1 at 3, 5–6, 11–12. Such allegations—especially when unsupported by affidavits or other materials—fall far short of establishing a policy or custom. *See Brown*, 520 U.S. at 407 ("A showing of simple or even heightened negligence will not suffice."); *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) ("Mere negligence will not suffice to show *Monell* liability."). And there is nothing before the Court that otherwise supports a finding of a policy or custom. *See Widener v. King County*, No. C08-1170JLR, 2009 WL 2578979, at *6 (W.D. Wash. Aug. 18, 2009) (dismissing takings claim against county where plaintiffs contended that the county was negligent in carrying out an emergency road repair and failed to cite to a policy or custom that was the moving force behind the damage allegedly caused to their property).

Instead, the uncontested facts demonstrate that the City's actions were taken at Mr. Airhart's direction, and that the City itself never sanctioned the complained-of conduct. *See* Dkt.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING STATE CLAIMS - 6

No. 15 at 3–4 (City representatives favored using a diffuser or energy dissipator, but instead decided to pipe the water at Mr. Airhart's request); *Jackson v. Gates*, 975 F.2d 648, 654 (9th Cir. 1992) ("[T]he municipality will be held to have caused an injury only when the acts which produce it were sanctioned by the municipality."). Nor do the facts suggest the presence of a practice "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

The Airharts fail to allege facts sufficient to establish *Monell* liability. The City's conduct is not the kind that might place a municipality on the hook for damages. *Compare Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 890 (9th Cir. 1990) (finding no evidence that policymakers "ever adopted a policy of carrying out improper administrative searches" because record showed that "every effort was made to avoid committing an illegal or unconstitutional act"), *with Halverson v. Skagit County.*, 42 F.3d 1257, 1260 (9th Cir. 1994) (county "pursued a policy of intentionally using plaintiffs' properties as an artificial flood water storage basin," and expert's affidavit "offer[ed] sufficient evidence for a reasonable juror to find that the County's operation of the diking system could divert additional flood waters into the . . . area and that the County was aware of this possibility.").

C. <u>Pendent State Claims</u>

This leaves the Airharts' state claims for quiet title, negligence, specific performance, inverse condemnation, trespass, nuisance, waste, and "property damage." Dkt. No. 1-1 at 5–14. Although the Court has supplemental jurisdiction over these claims, its "decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); 28 U.S.C. § 1367(c)(3). In declining jurisdiction under section 1367(c)(3), the Court "must first identify the dismissal that triggers the exercise of discretion"—here, granting the City summary judgment on

all federal claims—"and then explain how declining jurisdiction serves the objectives of economy, convenience and fairness to the parties, and comity." *Trs. of Const. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003).

The Airharts' pendent claims involve "[n]eedless decisions of state law" that the Court will avoid "both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law" in state court. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). *See also Desert Valley*, 333 F.3d at 926 (Section 1367(c)(3) enables a district court "to avoid determining an issue of state law when the federal claim, on which its jurisdiction rests, proves to be unfounded"). As the Supreme Court has observed, "in the usual case in which federal-law claims are eliminated before trial, the balance of the factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *accord Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th. Cir. 1997). That is the case here. *See, e.g.*, *City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1008 (9th Cir. 2010) (district court did not abuse its discretion by declining to exercise supplemental jurisdiction over pendent state claims); *Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162, 1169 (9th Cir. 2002) (same); *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (same).

## CONCLUSION

The Court therefore GRANTS the City summary judgment on the Airharts' section 1983 claims and REMANDS their pendent state claims to Grays Harbor County Superior Court.

The Court further DENIES as moot the City's Motions in Limine and VACATES the trial and remaining pretrial dates.

Dated this 15th day of February, 2022.

Lauren King
United States District Judge